*DU BREUIL, ET AL. VS. THE STATE, TO THE USE OF ROSENBAUM & BOYHARDTT.*

To make a constable, or his securities, liable on an execution, it is necessary to prove that the execution was delivered to the constable.

## APPEAL from St. Louis Court of Common Pleas.

PRIMM, *for Appellants, insists :*

1. From the transcript,[it appears that the second writ of *ca. sa.*, if it even came into DuBreuil's hands, should have been returned on the 16th August, 1841, from which time, up to the 11th March, 1846, when the verdict was rendered in the court below, the plaintiff can only recover the damages of one hundred per cent. This is a period of about 4 years and 7 months. The verdict should not have exceeded $45 83 1-3, the debt due on the *ca. sa.*, being only $10 00.

2. This suit is based upon the act respecting Justices' Courts. § 22 and 23 Rev. Code 1835, p. 368.

The remedy provided in the last section cited, against the constable and his securities, does not deprive them of the defence contemplated by section 22.

The bill of exceptions discloses that they have shown good cause why judgment should not be

rendered against them. The witnesses fix no liability upon DuBreuil, because they do not prove that he ever received the writ of *ca. sa.*

The instruction, therefore, given by the court was too broad. It took away from the jury the power to judge of the sufficiency of the cause shewn by the defendants, and narrowed down their inquiry to a mere question of identity of person.

3. The instructions asked for by defendants should have been given.

The transcript certified by Justice Butler states that on the 16th day of August, 1841, an *alias ca. sa.* was issued by the justice to the said constable, DuBreuil, but it does not state that it was *delivered* to him.

DuBreuil and his securities cannot be held responsible unless it be *proven* that the writ was *delivered* to DuBreuil. No such proof is found in the transcript; none such is made by the witnesses.

The fact of delivery to the constable was one which was taken away from the jury; a fact of which it was their province to judge, and from which they were cut off by the instructions refused, as well as by the instructions given.


MᴄBʀɪᴅᴇ, J., *delivered the opinion of the Court.*

This was an action commenced before a Justice of the Peace against a constable (and his securities) on his official bond. The defendants obtained judgment, from which the plaintiffs took an appeal to the Court of Common Pleas, where judgment was rendered in their favor; thereupon, the defendants appeal to this Court.

The bill of exceptions show, that upon the trial in the Court of Common Pleas, the plaintiff read in evidence the official bond of DuBreuil, the constable, and also a transcript of a judgment obtained before John Black, late a Justice of the Peace, certified by Mann Butler as his successor in office, wherein the said Rosenbaum & Co. were plaintiffs, and one Aldrich was defendant. The judgment was for $10 and costs of suit, and was rendered on the 1st June, 1841. On the 15th June, 1841, a *ca. sa.* was issued by the justice, which was, on the 16th August, 1841, returned by the defendant "no goods or chattels of defendant, nor defendant found." On the same day, an *alias* writ was issued by the justice to the said constable, which was not returned.

Evidence was then offered conducing to show that it was the usual custom for the justices to issue their process directed to a particular constable, (there being two in St. Louis township,) though it was not the universal practice—that the process thus issued was by them placed in a rack in their office, and the constables would call and take them out, whether the justice was present or not—that the first writ issued in the case of Rosenbaum & Co. and against Aldrich, was received by the defendant, and by him returned; but whether the second or *alias* writ was received

by the defendant, the justice could not state, as he had no recollection on the subject. Sometimes the process was directed generally, "to the constable," &c., and in such cases, the first constable who called at the office obtained it. The process in this case was so directed. The balance of the evidence was of a negative character.

Thereupon, the court instructed the jury that, "if the jury believe from the evidence that the constable, DuBreuil, mentioned in the transcript of the justice read to them, is the constable upon whose bond this suit is instituted, they will find for the plaintiffs." To the giving of which the defendants excepted, and then moved the court to give to the jury the following instructions: "That even if the jury shall believe from the evidence that the said *alias* writ of *fieri facias* was so issued and delivered, as stated in the plaintiff's declaration to the defendant, DuBreuil, yet if the defendant has satisfied the jury by evidence of the reason of his not returning the same, and said reason is a satisfactory excuse for not returning the same, they will find for the defendants."

"That it is competent for the defendant, by evidence, to explain the *prima facie* case made out by the transcript introduced by the plaintiff, and if the jury are satisfied from the evidence that although the *alias* writ of *fieri facias* was issued by said justice Black, yet if the same was not delivered to said constable, or that said constable never received the same, they will find for the defendants."

"That if the jury find from the evidence that the said *alias* writ of *fieri facias* was issued by the justice, yet the same was not delivered or received by the constable, DuBreuil, they will find for the defendants."

Which the court refused to give, and the defendants excepted. Thereupon, the jury retired to consider of their verdict, and not being able to agree, were, by order of the court, brought into court, and by the court told that the only enquiry they were to make was, whether Louis Du-Breuil, whose name was affixed to the bond given in evidence, was the same man whose name appeared in the transcript; and if they were satisfied of that fact, it was the only issue in the case, and they must find for the plaintiffs.

The first instruction asked for on the part of the defendant was properly overruled by the court, as there was no evidence upon which to predicate it. The defendant offered no excuse for not returning the *alias* writ, but relied in his defence upon the fact of his not having received the writ. It is not impossible to establish by evidence a sufficient legal excuse for failing to return a writ according to its command, but it was

not attempted in this case, and hence the instruction was impertinent.

We are of opinion, however, that the court erred in giving the instruction which it did at the instance of the plaintiffs, and in refusing the second and third asked by the defendants; as also in the oral charge to the jury. Before a constable can be subjected to the penalties of the law for failing to execute or return process according to its command, it is of the utmost necessity to establish by evidence the fact that he received the process to be by him executed. If it is a legal presumption that he did receive it, then perhaps the rule of law as delivered by the court below, in the instruction and charge given to the jury, might be maintained; but it is a question of fact, and the fit, and indeed the exclusive duty of the jury to find from the evidence adduced in the cause. Whether the constable executed the bond sued on, had not been put in issue, and was consequently admitted; but this admission by no means established the other facts necessary to be made out by the plaintiff before he was entitled to a recovery. If the identity of the defendant was the only question for the jury to find, then the introduction of the justice's transcript, of the judgment, the *fieri facias*, the return of the constable thereon, and the issuing of an *alias* writ, should have been excluded as evidence, inasmuch as they shed no light on the issue of personal identity.

The judgment of the Court of Common Pleas ought to be reversed, and the other Judges concurring, the same is reversed, and the cause remanded to that court for a new trial.